STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                         Location: PORTLAND
                                        Docket No: BCD-CIV-2022-00006


MOULISON LLC,                    )
                                 )
              Plaintiff,         )
                                 )
       v.                        )
                                 )          **ORDER GRANTING, IN PART,**
KENNETH MOULISON,                )        **PLAINTIFF'S MOTION TO STRIKE**
DONNA MOULISON, and              )         **DEFENDANTS' ERRATA SHEETS**
THE DONNA M. MOULISON            )
REVOCABLE TRUST,                 )
                                 )
              Defendants.        )


To what degree does Maine Rule of Civil Procedure 30(e) permit a deponent to make substantive revisions to deposition testimony using errata sheets? This issue lies at the heart of the motion now pending before the Court.

The underlying dispute in this case concerns two promissory notes executed by Defendants Kenneth Moulison ("Kenneth") and Donna Moulison ("Donna") to Plaintiff Moulison LLC ("Plaintiff") in October 2016 and March 2018. On July 9, 2021, Plaintiff filed a nine-count complaint in the York County Superior Court (*see* CV-2021-138), alleging breach of contract and unjust enrichment. Defendants counterclaimed for the same and discovery followed. On June 17, 2022, Plaintiff took Kenneth's and Donna's depositions. On July 30, 2022, Defendants submitted errata sheets pursuant to Rule 30(e). On August 26, 2022, in advance of moving for summary judgment, Plaintiff filed a Motion to Strike Kenneth and Donna Moulison's Errata Sheets (the "Motion to Strike" or "Motion"). On September 30, 2022, Plaintiff moved for summary judgment.

In its Motion to Strike, Plaintiff seeks to strike Kenneth's and Donna's errata sheets on the grounds that they impermissibly alter the substance of Defendants' sworn testimony, were

1

submitted for tactical reasons rather than for clarification, and provide insufficient and/or conclusory explanations for the changes. Defendants oppose the motion on grounds that Rule 30(e) expressly permits a party to make substantive changes to deposition testimony, that the errata sheets adequately explain the reasons for the changes, and that their submission was not tactically timed. The errata sheets bear directly on the analysis of whether there are genuine questions of material fact, and therefore must be addressed prior to any ruling on the summary judgment motion.

After carefully considering the parties' arguments and the relevant law, the Court concludes that although Rule 30(e) permits substantive changes to deposition testimony, Defendants have failed to adequately explain the reasons for the changes.

## **BACKGROUND**

In 1994 Kenneth Moulison founded Moulison North Corporation ("Moulison North"), a commercial electrical services company. By 2016, the company was suffering financial distress. In June 2016, Sargent, Inc. agreed to purchase Moulison North's assets through a holding company. As a result of that transaction, Moulison LLC was created. Kenneth was employed as the new company's president until June 2020, at which point the business was sold to a third party.

In early 2018, Kenneth and Donna were facing foreclosure of their residence located at 105 Pennacook Circle in Wells, Maine. Kenneth requested a loan from Plaintiff, in the form of an advance on future bonuses, to pay off the mortgage and save the home. On March 28, 2018, Defendants executed and delivered a promissory note to Plaintiff in the amount of $358,000.00. Plaintiff's Complaint alleges the note was payable on demand with 15 days' written notice and that Defendants failed to pay the total amount due.

2

In their counterclaims, Defendants argue the note was not capable of being called at Plaintiff's sole discretion but was part of a larger agreement between the parties. Defendants point to an email received from the company's Chief Financial Officer on March 28, 2018, which stated:

> "There are no set repayment terms per se, however the note must be paid in full no later than December 31, 2025 (7+ years). You may make payments on the note as you desire. Future net bonuses (that is, the amount remaining after agreed upon taxes are paid) will be applied against the note."

An implicit condition of this agreement, Defendants argue, was that Kenneth would remain employed by Sargent for at least seven years, during which time he would repay the note through bonuses. Defendants contend that following a breakdown in the parties' relationship, Plaintiff breached the contract by selling its assets prior to 2025, thereby ending Kenneth's employment with the company and impeding his ability to repay the 2018 note.

Plaintiff took depositions of Kenneth and Donna on June 17, 2022. Kenneth testified that he believed he had seven years to repay the note though bonuses. (Kenneth Moulison Dep. 155:11-16, 197:8-25.) Donna testified that she was aware of, and shared, Kenneth's belief. (Donna Moulison Dep. 30:6-31:1, 31:21-32:1.) However, Kenneth conceded that he neither had an agreement with Plaintiff regarding these additional terms nor believed them to be part of the note. (Kenneth Moulison Dep. 153:15-155:7.) Additionally, Donna conceded that she never discussed the note's terms with Plaintiff. (Donna Moulison Dep. 17:5-7, 60:14-20.)

On July 30, 2022, Defendants submitted errata sheets pursuant to Rule 30(e). Each errata sheet contained a proposed alteration to the original deposition transcript and a numbered reason corresponding to one of three "reason codes": "1. To clarify the record," "2. To conform the facts," or "3. To correct transcription errors." In total, the errata sheets contained twelve alterations, all purportedly for the purpose of clarifying the record. Specifically, Kenneth submitted the following eight erratas:

3

(1)    Page 148; Line 8; Reason: 1
       From:  About paying it [the 2018 note] down through future bonuses.
       To:    About paying it down through future bonuses, but they didn't give me the chance
       to do that.

(2)    Page 155; Lines 15-16; Reason: 1
       From:  So my feeling was I got seven years [to repay the 2018 note].
       To:    So my feeling was I got seven years but they didn't give the chance to repay through
       the bonuses.

(3)    Page 160; Line 21; Reason: 1
       From:  ... to rake in some bonuses to pay this [the 2018 note] off.
       To:    ... to rake in some bonuses to pay this off, but they didn't give me the chance to
       repay through the bonuses.

(4)    Page 166; Line 15; Reason: 1
       From:  I knew that [I would have to make provisions to pay the 2018 note].
       To:    I knew that. But they didn't give me the chance to repay through bonuses.

(5)    Page 169; Line 17; Reason: 1
       From:  ... I would address it [a shortfall in payments on the 2018 note] at the end
       To:    ... I would address it at the end but they never gave me the chance to pay it down
              through bonuses.

(6)    Page 197; Lines 18-19; Reason: 1
       From:  I also knew I had 7 years to pay to do it [the 2018 note].
       To:    I also knew I had 7 years to pay to do it, but it turns out they never gave me the
       chance.

(7)    Page 219: Lines 3-6; Reason: 1
       From:  I never said I didn't owe it [the 2018 note].
       To:    I owed the money but I was told I would be able to repay it through bonuses over a
              period of years. They then took that opportunity away from me.

(8)    Page 219: Lines 16-18; Reason: 1
       From:  I'm not going to sit here and say I don't owe them [Plaintiff] a dime because I don't
              believe that.
       To:    I'm not going to sit here and say I wouldn't have owed them a dime if we got to the
              end of the seven years discussed or if I quit. In either of those situations, I would
              have owed any amount still outstanding.

Additionally, Donna submitted the following four erratas:

(1) Page 35; Line 1; Reason: 1
From: Absolutely not. I don't [think we don't owe the 2018 note.]
To: I believe we did owe it, but part of the agreement was that Ken would be allowed to repay it out of bonuses over a period of years. They never gave him the chance to do that.

(2) Page 35; Lines 13-14; Reason: 1
From: I think that we do owe some [on the 2018 note].
To: I believe we did owe it, but part of the agreement was that Ken would be allowed to repay it out of bonuses over a period of years. They never gave him the chance to do that.

(3) Page 38; Line 7; Reason 1
From: Yes. We would owe it [the 2018 note, if Kenneth did not make enough in bonuses to repay it].
To: Yes. We would owe it, but part of the agreement was that Ken would be allowed to repay it out of bonuses over a period of years. They never gave him the chance to do that.

(4) Page 51; Line 13; Reason 1
From:
To: [Add at beginning of answer]: I was not in a rush.

The erratas effectively insert new testimony regarding two dispositive material facts. First, the additional testimony would support Defendants' claim that the note contained additional terms barring Plaintiff from demanding payment on the note, selling its assets, or terminating Kenneth's employment before December 31, 2025. Second, the new testimony contains an allegation that Plaintiff breached the agreement. The Court must now consider the propriety of these erratas.

**DISCUSSION**

Maine Rule of Civil Procedure 30(e) governs the submission of deposition transcripts to a witness for examination and alteration. The rule states:

> "When the testimony is fully transcribed the deposition shall be submitted to the witness by the officer for examination and shall be read to or by the witness, unless such examination and reading are waived by the witness and by the parties. Any changes *in form or substance* which the witness desires to make shall be entered upon the deposition by the office with a statement of the reasons given by the witness for making them."

5

M.R. Civ. P. 30(e) (emphasis added). Maine courts have noted that the plain language of Maine Rule 30(e) "expressly permits a deponent to make substantive changes to his testimony through an errata sheet." *Skibicki v. Reagan*, No. CV-95-545, 1996 Me. Super. LEXIS 192, at *17 n.7 (July 2, 1996). The outer limits of the rule, however, have not yet been concretely defined. For example, "the Law Court has not yet had occasion to address the propriety of a deponent's use of an errata sheet to make broad substantive changes to his testimony without justification for the change." *Id*.

In the absence of controlling precedent, this Court may appropriately consider case law and commentaries on federal rules of civil procedure that are functionally equivalent to Maine's rules of civil procedure. *McKeeman v. Duchaine*, 2022 ME 23, ¶ 8 n.2, 272 A.3d 300. The federal analogue to Maine Rule 30(e), Federal Rule of Civil Procedure 30(e)(1), states:

> "On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes *in form or substance*, to sign a statement listing the changes and the reasons for making them."

Fed. R. Civ. P. 30(e)(1) (emphasis added). Like Maine Rule 30(e), Federal Rule 30(e)(1) contemplates changes "in form or substance" and requires any change to be supported by a "statement [of] the reasons" for the change. Accordingly, this Court looks to federal case law to inform its analysis of Maine Rule 30(e).

The exact scope of Federal Rule 30(e) is a topic of debate among the federal courts. Much of this controversy stems from *Greenway v. International Paper Co.*, a 1992 case out of the Western District of Louisiana. In that case, the plaintiff sought to make 64 individual corrections to her deposition testimony, many of which directly contradicted her original answers, on grounds that the corrections were more accurate and complete, that she subsequently recalled more accurate information, and that she wished to clarify her answers. In barring her from doing so, the court

6

reasoned that Federal Rule 30(e) "cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses." Instead, the court interpreted Federal Rule 30(e) as a tool for correcting substantive errors (such as reporting a "yes" answer where a deponent answered "no") and formal errors (such as incorrectly spelling a deponent's name). "A deposition," the court famously concluded, "is not a take home examination."

In the years following *Greenway*, federal courts have split in their interpretations of Rule 30(e). A minority of courts adhere to the narrow interpretation epitomized by *Greenway*. *See, e.g.*, *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002). *See generally Sills v. Enprotech Corp.*, No. 3:05CV32-B-A, 2006 U.S. Dist. LEXIS 97153, at *5 (N.D. Miss. June 26, 2006). Under the minority approach, changes to deposition testimony are allowed only to remedy typographical or transcription errors. *Sills*, 2006 U.S. Dist. LEXIS 97153, at *5. In other words, Federal Rule 30(e) "specifically prohibits deponents from using errata sheets as a means of adding to or changing the actual testimony that was given at the deposition." *Id.* According to these courts, the phrase "changes in form or substance" entails only "making corrections of errors made in the transcription process as opposed to changing the words spoken by the deponent." *Id.* As one court put it, "the purpose of an errata sheet is to correct alleged inaccuracies in what the deponent said at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said." *Crowe v. Marchand*, No. 05-98T, 2006 U.S. Dist. LEXIS 98142, at *2 (D.R.I. Aug. 16, 2006) (denying, in part, defendant's motion to strike errata).

Many courts have found the minority approach incompatible with the explicit language of Rule 30(e). *See, e.g.*, *Sills*, 2006 U.S. Dist. LEXIS 97153, at *6. Consequently, the majority of federal courts have eschewed *Greenway* in favor of a "plain language" approach. *See, e.g.*, *Pina*

*v. The Children's Place*, 740 F.3d 785, 792 (1st Cir. 2014); *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997). Under the majority approach, "Rule 30(e) does not limit a party to the correction of stenographic errors." *Pina*, 740 F.3d at 792. On the contrary, because "the language of the rule places no limitations on the type of changes that may be made," any change in form or substance is permissible as long as the deponent complies with the rule's procedural requirements. *Podell*, 112 F.3d at 103. Judges are not required "to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes—even if those reasons are unconvincing." *Id.* Nonetheless, to prevent abuse, courts employing the majority approach have implemented safeguards such as retaining the original deposition transcript, which may then be used to oppose a motion for summary judgment or to cross-examine a deponent at trial. *Id.*; *Sills*, 2006 U.S. Dist. LEXIS 97153, at *4-5; *Glenwood Farms, Inc. v. Ivey*, 229 F.R.D. 34, 35 (D. Me. 2005).[1]

Notwithstanding the plain language of Rule 30(e), courts are often particularly skeptical of errata sheets that appear to have been tactically submitted in response to a motion for summary judgment. At least the Third, Seventh, Ninth, and Tenth Circuits have analyzed such errata sheets under the "sham affidavit" rule, which provides that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1225 (9th Cir. 2005); *see also EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 270 (3d Cir. 2010) ("We see no principled reason to distinguish between affidavits and errata sheets in this context, and we conclude that the proper analysis for each is the same."); *Burns v. Bd. of Cty. Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Thorn v. Sundstrand Aero. Corp.*, 207

---

[1] Additional measures include reopening the deposition for limited purposes and requiring the deponent to pay the costs of reopening his deposition. *See Walker v. George Koch Sons, Inc.*, No. 2:07cv274 KS-MTP, 2008 U.S. Dist. LEXIS 81919, at *8 (S.D. Miss. Sep. 18, 2008).

F.3d 383, 389 (7th Cir. 2000). These courts reason that "while the language of [Federal Rule] 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton*, 397 F.3d at 1225.[2] Thus, when an errata sheet is submitted during the summary judgment stage, "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn*, 207 F.3d at 389.

Federal district courts throughout New England have generally followed the majority approach. *See, e.g.*, *Semmami v. UG2 LLC*, No. 18-12396, 2021 U.S. Dist. LEXIS 54426, at *9-11 (D. Mass. Mar. 22, 2021); *Berndt v. Snyder*, No. 13-cv-368-SM, 2014 U.S. Dist. LEXIS 170098, at *18 n.10 (D.N.H. Dec. 9, 2014); *TG Plastics Trading, Co. v. Toray Plastics (America), Inc.*, No. 09-336M, 2013 U.S. Dist. LEXIS 10930, at *3-6 (D.R.I. Jan. 28, 2013). Until recently, the United States District Court for the District of Maine also embraced this approach. *See Glenwood Farms*, 229 F.R.D. at 35 ("Changes in the substance of a deponent's testimony are contemplated by the rule . . . so long as the deponent gives reasons for changes or additions to his deposition testimony under the terms of Rule 30(e) and the original testimony remains in the transcript, no action by the court is indicated."); *Elwell v. Conair, Inc.*, 145 F. Supp. 2d 79, 87 (D. Me. 2001) (rejecting *Greenway* and concluding the plain language of Rule 30(e) should control); *Metayer v. PFL Life Ins. Co.*, No. 98-177-P-C, 1999 U.S. Dist. LEXIS 23432, at *7 (D. Me. July 15, 1999) ("Rule 30(e) clearly empowers a deponent to change the substance of her testimony if she: (i) does so in thirty days, (ii) signs a statement reciting the changes made, and (iii) states her

---

[2] In *Hambleton*, the Ninth Circuit ultimately sidestepped the issue by holding that the district court did not abuse its discretion in striking the deposition errata because the plaintiff-appellant failed to comply with the procedural dictates of Rule 30(e).

reasons for each of the changes made."). More recently, however, the Federal District Court in Maine has updated and modified its analysis. *See Godfried v. Ford Motor Co.*, No. 1:19-cv-00372-NT, 2022 U.S. Dist. LEXIS 129263, at \*17 (D. Me. July 21, 2022).

In *Godfried*, a products liability case, the plaintiff was severely injured by the protruding blade of a Ford mower. The mower blade, which had been locked down for transport using an aftermarket restraining device, had slipped out of position. During her deposition, the plaintiff's expert witness expressed no opinion on the original restraining device and did not identify any defects in its design. However, the expert later submitted an errata sheet in which she sought to overwrite her original testimony and insert an opinion that the original part was defective. Although the errata sheet directly contradicted the expert's deposition nine different times, the only reasons offered to justify the changes were "clarity" and "accuracy." In ruling on the defendant's motion for summary judgment, U.S. District Judge Nancy Torresen stressed that "[a]n errata that changes deposition testimony must be supported by 'the reasons for making' those changes." *Id.* at \*17. Thus, the expert's errata sheet was "problematic not necessarily because she sought to contradict her original testimony," but rather because "she did so without adequately explaining the reason(s) for the contradiction." *Id.* at \*18. Given that the reasons provided by the deponent were conclusory and offered no explanation at all, the court rejected the erratas and granted summary judgment for the defendant.[3]

In light of this complex body of case law, this Court seeks a resolution that remains faithful to the plain language of Maine Rule 30(e) without diminishing the utility of summary judgment as a procedure for screening out sham issues of fact. *See EBC, Inc.*, 618 F.3d at 270. On the one hand,

---

[3] It is not clear whether the errata sheet in *Godfried* was filed in response to the defendant's motion for summary judgment. However, for reasons discussed more thoroughly below, the timing of the errata sheets' submission is not dispositive to the outcome of this case.

the Court acknowledges there are legitimate reasons for using errata sheets. *See Godfried*, 2022 U.S. Dist. LEXIS 129263, at *16-17. On the other hand, depositions would lose much of their meaning, and would in effect merge with interrogatories, if witnesses could simply overwrite their deposition testimony using answers crafted with the benefit of hindsight. This is especially true in the context of summary judgment.

Overall, the Court agrees with Defendants and the majority of courts that the plain language of Federal Rule 30(e) permits substantive changes to deposition testimony, even if those changes are contradictory. However, this permission is not unlimited, especially when considered in conjunction with summary judgment. Just as the plain language of Rule 30(e) permits changes in form or substance, so too does it impose a limit on those changes. Specifically, "an errata that changes deposition testimony must be supported by 'the *reasons* for making' those changes." *Godfried*, 2022 U.S. Dist. LEXIS 129263, at *17 (emphasis added). A "reason" is a statement offered in explanation or justification. *Merriam-Webster* (2022 ed.). In other words, it cannot be a wholly conclusory statement that offers "no explanation at all." *Godfried*, 2022 U.S. Dist. LEXIS 129263, at *19. Consequently, a "reason" that fails to adequately explain a change is tantamount to no reason at all, and an errata sheet that is supported only by vague or conclusory reasons cannot be said to comply with the requirements of Federal Rule 30(e).

While judges are not required to examine the sufficiency of the reasons for the changes, nothing in Rule 30(e) expressly forbids them from doing so when necessary. Indeed, courts have noted that such an inquiry is entirely proper. *Hambleton*, 397 F.3d at 1224-25 ("A statement of reasons explaining corrections is an important component of errata submitted pursuant to [Federal Rule] 30(e), because the statement permits an assessment concerning whether the alterations have a legitimate purpose.") In this case, the fact that the Motion to Strike preceded the Motion for

Summary Judgment by a month is of no significance. The two motions were filed in close temporal proximity, and the Motion for Summary Judgment hinges on and cannot be decided without first deciding the Motion to Strike. This case thus squarely fits within the "sham affidavit" approach taken by cases considering motions to strike errata sheets in the context of summary judgment.

Some courts, in sketching the contours of the sham affidavit rule, have relied on enumerated criteria for rejecting substantive changes. *See*, *e.g.*, *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."); *see also Burns*, 330 F.3d at 1282 (applying *Franks* factors to errata sheet). These factors may serve as useful guideposts. However, in the absence of controlling precedent, this Court declines to adopt a formalistic approach. Suffice to say that the reason given for a change must be proportional to the change itself. In the case of minor transcription errors, for example, a simple "reason code" may well be sufficient. But where a party seeks to make broad or contradictory changes in substance, a more thorough explanation is warranted.

Having canvassed the relevant case law, the Court concludes that the principles discussed above in the context of Federal Rule 30(e) should apply with equal force to Maine Rule 30(e). The Court now turns to the motion at hand.

In this case, Defendants' errata sheets fail to adequately explain the reasons for the changes and, consequently, do not satisfy the requirements of Rule 30(e). With the exception of Donna's fourth and final errata, Defendants' erratas do not clarify the record. Instead, they insert new testimony on dispositive material facts that was not developed during Defendants' depositions.

12

While Defendants correctly point out that their errata sheets do not introduce a new theory of their case, the precise issue here is not whether the information was "entirely missing" from Defendants' case as a whole, but whether it was missing from Defendants' "pre-errata deposition testimony." *Godfried*, 2022 U.S. Dist. LEXIS 129263, at *15.

Defendants in this case, like the expert witness in *Godfried*, seek to use errata sheets "to introduce evidence that does not appear in [their] original deposition testimony." *Id.* at *15-16. Although Kenneth and Donna testified as to their understanding of the note's terms, they neither claimed to have an agreement on these terms nor alleged that Plaintiffs breached such an agreement. Their original testimony, while potentially unfavorable to Defendants, was not unclear. The suggestion that the testimony of both deponents was unclear in precisely the same way (and hence required obviously coordinated "clarifications") stretches credulity. Thus, because the reasons offered for the changes are conclusory and fail to provide adequate explanation, Defendants' errata sheets do not meet the requirements of Rule 30(e).

Lastly, Defendants argue that Plaintiff implicitly waived the right to object to the errata sheets by declining an opportunity to reopen the depositions at Defendants' expense. The Court disagrees. Reopening the depositions would have been self-defeating and played directly into Defendants' gambit. Furthermore, although reopening depositions is one potential valid remedy, *see Bay State HMO Mgmt. v. Tingley Sys.*, 152 F. Supp. 2d 95, 120 (D. Mass. July 11, 1995), it is by no means the only remedy available. As many of the above-discussed cases illustrate, a motion to strike can be an appropriate procedural vehicle for resolving disputes over errata sheets, and it was appropriate in the circumstances of this case. In short, Plaintiff did not commit a "tactical misstep" by moving to strike the erratas rather than seeking to reopen the depositions.

## CONCLUSION

Based on the above, the Court **GRANTS**, in part, Plaintiff's Motion to Strike Defendants'

Errata Sheets and hereby **ORDERS** as follows:

(1) Defendant Kenneth Moulison's erratas shall be struck;

(2) Defendant Donna Moulison's first three erratas shall be struck;

(3) Defendant Donna Moulison's fourth errata shall be accepted; and

(4) The original, unedited deposition transcripts shall be preserved for the record.

So Ordered.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to

Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: **11/21/2022**

Michael A. Duddy
Judge, Business and Consumer Court

Entered on the docket: 11/22/2022

14

BCD-CIV-2022-00006

MOULISON, LLC

     *Plaintiff(s)*

*v.*

DONNA M. MOULISON REVOCABLE TRUST, et al.

     *Defendant(s)*

| Party Name: | Attorney Name: |
|---|---|
| *Plaintiff:* | |
| *Moulison, LLC* | Shawn Doil, Esq.<br>Micah Smart, Esq.<br>**Eaton Peabody**<br>PO Box 15235<br>Portland, ME 04112 |
| *Defendant:* | |
| *Donna M Moulison Revocable Trust*<br>*Donna Moulison*<br>*Kenneth Moulison* | David C. Johnson, Esq<br>**Marcus Clegg**<br>16 Middle Street, Suite 501<br>Portland, Me 04101 |